**562·15**

NO. 06-14-00112-CR

ORIGINAL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IN THE COURT OF

CRIMINAL APPEALS

AUSTIN, TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

RASHAD LEE,

Petitioner

VS.

THE STATE OF TEXAS,

Respondent

JUN 29 2015

Abel Acosta, Clerk

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Appealed from the 76th District Court
Morris County, Texas
Trial Court No. 10,947-CR

---

**PETITION FOR DISCRETIONARY REVIEW**

---

RASHAD LEE   #1932553
ALLRED UNIT
2101 FM 369 NORTH
IOWA PARK, TEXAS   76367

PRO SE

FILED IN
COURT OF CRIMINAL APPEALS

JUL 02 2015

Abel Acosta, Clerk

June 15, 2015

Clerk of Court of Criminal Appeals
P.O. Box 12308
Austin, Texas 78711

RE: Appeal Number 06-14-00112-CR
     Lee v. State

Dear Clerk,

Enclosed, please find a true and correct copy of the Petition For Discretionary Review and it's Appendix.

Please file and bring to the attention of the Court.

Respectfully,

Rashad Lee #1932553
Allred Unit
2101 FM 369 North
Iowa Park, Texas
                                    76367

## TABLE OF CONTENTS

Page

TABLE OF CONTENT............................................... i

INDEX OF AUTHORITIES ......................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................. 1

STATEMENT OF THE CASE ........................................ 1

STATEMENT OF PROCEDURAL HISTORY .............................. 2

GROUNDS FOR REVIEW .......................................... 3

    Issue For Review One - Whether the Sixth District Court of
    Appeals' Decision Conflict with the First District Court of
    Appeals' Decision on the same Issue...................... 3

    Whether the Sixth District Court of Appeals has decided an important
    question of State or Federal Law that has not been, but should
    be, settled by the Court of Criminal Appeals .............. 7

ARGUMENT ................................................. 3,7

PRAYER FOR RELIEF........................................... 8

APPENDIX (ATTACHMENT "A" COURT'S OPINION)..................... 10

## INDEX OF AUTHORITIES

**Cases**

Blake v. State, 971 SW 2d 451, 454 (Tex. Crim. App. 1998)............ 6

Cantelon v. State, (App. 3 Dist. 2002) 85 SW 3d 457 ................ 7

Young v. State, 95 SW 3d 448 (Tex. App. - Houston [1st Dist] 2002)... 3,4,6,7

**Statutes**

Code of Criminal Procedure Art. §38.14 ............................... 4,6

Code of Criminal Procedure Art. §38.141............................... 6,7

**Miscellaneous**

Government Code §501.014................................................ 8

Government Code §501.104(b)............................................. 8

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument in this case would be extremely helpful in this case in order to produce further evidence before this Court that the Petitioner do not currently have in possession.

## STATEMENT OF THE CASE

The State conspired with Charles Taylor and DPS Officers Chris Brook, Greg Wilson, and two other alleged officers by the name of Perry and Lieutenant Deramus in which never testified at the trial on behalf of the State, to build a case on Rashad Lee.

Charles Taylor testified that at the time he was in prison for delivery of a controlled substance. (3 RR 128). Charles Taylor testified that he purchased cocaine for the amount of $225. (3 RR 134). He further testified that Mr. Lee and Katrina Moore were walking with a pit bill, and that he dropped the dope because he was scared of the dog and that the transaction happened quickly, and that he was the one that picked the dope up. (3 RR 139).

Chris Brock testified that he equipped Taylor with audio and video recording devices and a device that allowed law enforcement to listen while Mr. Taylor made his purchase with Mr. Lee. (3 RR 28). He further testified that Taylor called Mr. Lee to purchase a quarter ounce of crack cocaine for $225, and the phone was on speakerphone (3 RR 29). He never testified as to how they could had or could have had a speakerphone hooked up at a cementary. Chris Brock never testified as to whether the money was marked they claimed to have given Charles Taylor. He never testified that they saw two men walking down the road, one of whom had a dog on a leash. Brock never testified to seeing Charles Taylor drop anything (allegely dope) on the ground or pick up anything off the ground, nor did Brock testify as to the dog making any attempt to bite Charles Taylor, nor whether or not it appeared Charles Taylor to appear scared of the alleged pit bill.

1.

Stephanie Johnson testified she worked for the DPS Crime Lab in Tyler, Texas, testing Controlled Substances. (3 RR 52). Johnson claimed to have found the substance to be an illegal Controlled Substance. (3 RR 55). Johnson further testified that the Controlled tested to be cocaine (3 RR 56) in the amount of 2.5 grams of crack cocaine (3 RR 60), in which she never conducted any tests to determine the percentage of cocaine in the alleged 2.5 grams (3 RR 62), therefore, establishing evidence that she can not say if it was actually crack cocaine.

Greg Wilson testified that he was assigned to the Criminal Investigation Division (3 RR 89) and that he worked the buy/walk with Charles Taylor and Rashad Lee on March 21, 2012 (3 RR 90), and that he made several buys using Mr. Taylor as a cooperating individual (3 RR 91). Greg Wilson also testified that it was two men walking with a dog, yet never testified to seeing Mr Taylor dropping any dope, nor picking up anything off the ground, nor having any fear of the pit bull. He further testified that all equipment was accounted for and deactivated then he gave it to Agent Brock (3 RR 93), yet never testified to any marked money being found on Reshad Lee.

The state is currently holding and innocent man, Rashad Lee, confined in TDCJ-ID, for a crime he never committed. There is no clear evidence as to how Charles Taylor was in prison at the time the alleged transaction was said to have occurred, what deal was made with him or whether he actually made any contact with Rashad Lee, due to the State apologizing for the quality of the video in opening remarks (3 RR 18, 20) and both officers blamed time/date differences on the video as being mechanical problems outside their control or expertise, and Rashad Lee not being arrested for the charge until a year later.

### STATEMENT OF PROCEDURAL HISTORY

Rashad Lee was convicted on June 18, 2014 by Jury. The trial Judge signed a judgment of conviction on June 18, 2014 by jury. The Defense Attorney, JERRY PRATT gave Notice of Appeal.

2.

EBB B MOBLEY, counsel or appeal filed an Appellant's brief on the 5th day of December, 2014. The SIXTH COURT OF APPEALS in Texarkana, Texas received for Review on January 7, 2015 and affirmed the trial court's judgment on April 9, 2015. The Petition For Discretionary Review (PDR) was due May 9, 2015. Rashad Lee, on May 1, 2015, filed a Motion For Extension of Time to file the PDR. On May 11, 2015, The Court of Criminal Appeals, COA Case No. 06-14-00112-CR, extended the time to file the PDR to July 10, 2015.

## GROUNDS FOR REVIEW

### ISSUE FOR REVIEW ONE

**WHETHER THE SIXTH DISTRICT COURT OF APPEALS' DECISION CONFLICT WITH ANOTHER COURT OF APPEALS' DECISION ON THE SAME ISSUE**

### ISSUE FOR REVIEW TWO

**WHETHER THE SIXTH DISTRICT COURT OF APPEALS HAS DECIDED AN IMPORTANT QUESTION OF STATE OR FEDERAL LAW THAT HAS NOT BEEN, BUT SHOULD BE, SETTLED BY THE COURT OF CRIMINAL APPEALS**

## ARGUMENT

### ISSUE FOR REVIEW ONE

Whether The SIXTH DISTRICT COURT OF APPEALS' Decision Conflict
With Another Court Of Appeals' Decision On The Same Issue

Petitioner contends that the Sixth District Court of Appeals in Texarkana, Texas has made a ruling on the merits of his appeal contrary to the First District Court of Appeals in Houston, Texas.

Petitioner's Appeal Counsel, EBB B. MOBLEY, raised the Ground in the appeal brief asking the SIXTH DISTRICT COURT OF APPEALS the Question, "Is there sufficient evidence to corroborate the testimony of the covert agent Charles Taylor?"

The Sixth District Court of Appeals made it's decision contrary to the First District Court of Appeals in Young v. State, 95 SW 3d 448 (Tex. App. - Houston [1st Dist.] 2002). In the Young Court, it states,

3.

"Test for determining whether evidence is sufficient to corroborate accomplice testimony is to eliminate all accomplice evidence and determine whether the other inculpatory facts and circumstances in evidence tend to connect defendant to the offense." Vernon's Ann. Texas C.C.P. art. 38.14.

Further, the Young Court stated, "In context of statute requiring corroboration of accomplices' testimony, the testimony that is to be eliminated from consideration is that testimony given by live witnesses speaking under oath in Court." Vernon's Ann. Texas C.C.P. art. 38.14.

The Sixth Court of Appeals had made a ruling contrary to the Young Court, and has failed to eliminate the testimony of the live witnesses. Had the Sixth Court of Appeals eliminated the live witnesses' testimony speaking under oath the Court of Appeal would have saw that there is no evidence to connect Rashad Lee to the Crime. The facts will only show a conspiracy to charge or convict Rashad Lee of the offense in Question.

The Young Court was the same identical as the instant case and was reversed due to the fact the confidential information, Hamilton Farr, was the only one to identify the appellant in the case. As here, in the instant case, Charles Taylor was the only one that identified Rashad Lee as the person who sold him the dope. The officer could not say it was Lee.

Chris Brock claimed to have searched Charles Taylor to ensure there was no drugs on him, yet he failed to search the car and there is no testimony as such serch of the car. Young v. State, 95 SW 3d 448 (Tex. App.- Houston [1st Dist] 2002). In Young, the officer searched the confidential informant and the car, and the court found there to not be enough evidence, as we have here in the instant case.

Further, the Young Court stated that the Officer Galloway stopped following Farr when Farr turned onto County Road 2039. The same happened in the instant case, all officers stopped following Charles Taylor when he turned off County Road 3108, and no one went to the location said to have been the location the transaction allegedly occurred.

Further in the Young Court, the court found that Hamilton Farr was arrested for selling marijuana to another confidential informant, and that confidential informants may have incentives to create criminal

4.

cases or shade their testimony in favor of the state in hope that they will be rewarded with greater leniency later on.

This reviewing court must take notice that Charles Taylor was either in prison or had charges pending for Delivery of a Controlled Substance (3 RR 128). This was evidence and reason for Charles Taylor to falsely testify against Rashad Lee, and that he had some type of dope connection before claiming to come into contact with Rashad Lee. The Officer nor the Sixth Appeal Court cannot say whether or not Taylor had dope in the car, because the car was not searched. Lee will show the court other reasons that he has not been connected to the case:

1) Chris Brock nor Greg Wilson has ever met Lee, therefore, neither could say whether Charles Taylor spoke with Lee.

2) They never searched Taylor's car.

3) The money that the Agent claimed to have given Taylor was not marked, nor was Lee found to have been in possession of any money or marked money.

4) Neither of the officer followed Taylor to the alleged spot where they claimed the transaction took place.

5) Neither of the officer saw Taylor being in fear of the pit bull.

6) Neither saw Charles Taylor drop any dope or bend down to pick up any dope.

7) Rashad was not arrested until a year later, in which is evidence the officers conspired to build a case against Lee, due to the fact had they witnessed a dope transaction they would have immediately arrested Lee and they could have confiscated the money or any money that Lee may have had or held in his possession.

8) Taylor testified that it was a woman and a man walking the road, yet Chris Brock and Greg Wilson testified that it was two men. There's a contradiction here that the court must look at.

9) Chris Brock and Greg Wilson, both provided different dates and times in which the video was alleged to have been made. The state apologized for the quality of the video in opening remarks (3 RR 18) and both Agents blamed time/date differences in the video as being mechanical problems outside their control or expertise.

The Court must make a decision on the Code of Criminal Procedure Art. 38.141, inwhich require that the defendant conviction be based, at least in part, upon "other evidence tending to connect" an accused with the offense. See Young v. State, 95 SW 3d 448 (Tex. App. - Houston [1st Dist] 2002).

The Sixth Appeal Court failed to make considerations of the evidence without Charles Taylor's testimony. In Blake, the court explained that "the rule reflects a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentive to lie, such as to avoid punishment or shift blame to another person", as we have in the instant case. See Blake v. State, 971 SW 2d 451, 454 (Tex. Crim. App. 1998).

The Sixth Appeal Court's ruling was totally contrary to the Young Court. The Court of Criminal Appeals should first determine what the requirements are in regards to art. 38.141 of the Code of Criminal Procedures, due to the Young Court using C.C.P. art. 38.14 as help in interpreting C.C.P. art. 38.141, inwhich there is no case law. This court should reverse this case and order Lee to be released from his unlawful confinement.

Even after the court considering the evidence without Charles Taylor's testimony, the Court still have to delete the testimonies of Chris Brock and Greg Wilson, for consideration is there other evidence. Young v. State, 95 SW 3d 448 (Tex. App. - Houston [1st Dist] 2002).

The Court of Appeals for the Sixth District Court of Appeals can not assume any information. There is either evidence or there's not, and the Court can not say there is evidence when the testimonies do not match and are contrary/inconsistent with each other. The Young Court has set out the requirements, standards and guidelines for the Sixth Appeals Court to conduct a fair and impartial ruling on such case as we have now, yet the Sixth Court of Appeals have even added evidence in the record that's not listed in the record, such as "Chad Brock" being an officer in the case when there is no such named officer in the record.(See Appendix "A" Court's Opinion - page 3). Further the Appeals Court noticed that Agents could not identify the alleged two men.(See Appendix "A" Court's Opinion - page 4). When the evidence

6.

do not connect Rashad Lee to the offense, Lee must be released from his unlawful and illegal confinement.

Likewise here as to the Young Case, the tape recording did not connect Lee to the cocaine transaction, nor did Lee testify at the trial, nor could the others (officers) connect Lee to the voice, due to the fact they did not know Lee, nor had they ever heard his voice, and the fact that the jury was able to listen to an audio, if it worked at the time, of a possible cocaine transaction is insufficient to connect Lee with the commission of the offense because corrobating evidence is not sufficent if it merely "Show the commission of the offense". The same exact situation occurred in Young the exact same way. The Sixth Appeal Court errored in ruling contrary to the decisions of the Young Court. See Young v. State, 95 SW 3d 448 (Tex. App. - Houston [1st Dist] 2002).

## ISSUE FOR REVIEW TWO

Whether The Sixth District Court Of Appeals Has Decided An
Important Question Of State Or Federal Law That Has Not Been,
But Should Be, Settled By The Court Of Criminal Appeals

The Sixth Court Of Appeals has decided an important Question of law that has failed to adequately interpret the meaning, requirements, and essential elements of Texas Code of Criminal Procedure art. 38.141, in which the Court of Criminal Procedures should settle the unresolved issue, due to the fact there is no case law interpreting art. 38.141, but art 38.141 has long required in striking similar language that the state must present evidence to corroborate the accomplice testimony. Cantelon v. State, (App. 3 Dist. 2002) 85 SW 3d 457.

The Sixth District Court of Appeals relied upon art. 38.141 of the Texas Code of Criminal Procedures to conduct it's analysis, in which there is no case law to support the affirming of the Appeal Court's Judgment.

The Court misconstrued the art. to say that only the commission of the offense or what appears to be the commission of an offense is needed to show Rashad Lee was connected to the offense.

The Court of Criminal Appeals should resolve the issue as to what is the law in this case and it's interpretation. Art. 38.141 has not

7.

been interpreted by any case law, but article 38.14 has long required in strikingly similar language that the state must present evidence to corroborate the accomplices testimony. The Court of Criminal Appeals must use this case as an outline or the law to interpret the real and true meaning of the article, after the decision of the Court of Criminal Appeals.

Further the Court of Appeals, Sixth District has claimed to not have jurisdiction over Lee's Due Process argument, when in fact, the Court of Criminal Appeals should address the issue because it has not been addressed.

The Government Code §501.104(b) requires a certain amount of procedural due process before withdrawal of funds from inmate trust account. The Sixth District Appeals Court made the ruling, and now is making ruling contrary to it's prior ruling on the same issue.

The Court Clerk prepared and filed a bill of costs on June 18, 2014, ordering TDCJ to withdraw funds from the Inmate Trust Fund Account of Rashad Lee without providing notice of removing or attempting to remove the funds.

The Sixth Court of Appeals errored in making it's finding/affirming of the Ground based upon a statute that the Appellate Brief never raised. The Court of Appeals used the Government Code, Section 501.014, when in fact the Government ruled upon was contrary to the Ground and Code raised and argued in the Appellate's brief. (See Appendix "A" Court's Opinion at page 6, ¶).

The Appeals Court would have jurisdiction due to this being a Criminal Case. If the Court of Appeals do not have jurisdiction, them the Government Code used do not apply and any and all funds that has been deducted from Lee's account must be returned.

## PRAYER FOR RELIEF

Lee prays that this Court will reverse and remand this case or release him from further unlawful confinement after a thorough and foregoing review of the factual Issues for review has been reviewed by this Court

and the Court find that the Issues For Review has established that the Sixth Court of Appeals has errored in it's findings and ruled contrary to the First Court of Appeals and order the Court to release him from his unlawful confinement.

Executed on this 15 day of June, 2015.

Respectfully Submitted

*Rashad Lee*

Rashad Lee #1932553
Allred Unit
2101 FM 369 North
Iowa Park, Texas
76367

## CERTIFICATE OF SERVICE

I Rashad Lee, do certify that a true and correct copy of this Petition For Discretionary Review was mailed to: Clerk - Court of Criminal Appeals, P.O. Box 12308, Austin, Texas 78711, by U.S. Mail, post pre-paid on this 15th day of June, 2015.

*Rashad Lee*

Rashad Lee

APPENDIX "A" TO PDR

NO. 06-14-00112-CR

(ATTACHMENT "A" - COURT'S OPINION)

10.



## In The
## Court of Appeals
## Sixth Appellate District of Texas at Texarkana

No. 06-14-00112-CR

RASHAD LEE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 76th District Court
Morris County, Texas
Trial Court No. 10,947CR

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

While working as a confidential informant for the Texas Department of Public Safety (TDPS), Charles Taylor purchased crack cocaine from Appellant, Rashad Lee. After completing the transaction, Lee was arrested and charged with delivery of a controlled substance. At his trial, the jury found Lee guilty and sentenced him to serve forty years in the Correctional Institutions Division of the Texas Department of Criminal Justice. The jury also imposed a $5,000.00 fine. The trial court imposed sentence in open court and remanded Lee to custody. The next day, the trial court signed the judgment of conviction and an order requiring the withdrawal of funds from Lee's inmate account for payment of the fine and court costs.

In his first point of error, Lee argues that the State's evidence fails to adequately corroborate the confidential informant's testimony because it does not tend to connect him to the commission of the crime as required by Article 38.141 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.141 (West 2005). In his second point of error, Lee argues that the State denied him due process by ordering the withdrawal of funds from his inmate account without notice or a hearing. Because we find the corroborating evidence satisfied Article 38.141's requirements, we overrule Lee's first point of error. Because Lee failed to properly present his second point of error, we overrule that point as well.

## I. First Point of Error: Insufficient Corroborating Evidence

### A. Applicable Facts

Taylor telephoned Lee and set up a meeting to purchase one-quarter of an ounce of crack cocaine for $225.00 Lee told Taylor to meet him at a particular location near a cemetery. He also

2

told Taylor he would be walking a dog and would meet him there. TDPS Investigating Agent Chad Brock and three other officers listened to the call as it occurred. Brock and the other officers accompanied Taylor to the prearranged location.

Before arriving at the location, Agent Brock searched Taylor to verify that he had no drugs or money, and he did not. Brock provided Taylor with a key fob containing a video camera so that he could record the transaction. He also gave him $225.00 in cash to purchase the cocaine. Brock and the other officers followed Taylor at a distance so that they could provide assistance to Taylor if something went wrong during the transaction. They saw Taylor meet a man walking his dog and watched them walking together. When he reconnected with the officers, Taylor produced a baggie, which was later determined to contain approximately 2.56 grams of cocaine. He did not have in his possession any of the money given to him by Brock.

## B. Standard of Review

In a case such as this, any testimony from a confidential informant must be corroborated by other evidence tending to connect the defendant with the alleged offense. TEX. CODE CRIM. PROC. ANN. art. 38.141. We review confidential informant corroboration in the same manner and by the same measure as we would review the testimony from an accomplice witness. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

To adequately corroborate Taylor's testimony,

> "[a]ll the law requires is that there be some [other] evidence which tends to connect the accused to the commission of the offense. While individually these circumstances might not be sufficient to corroborate the [confidential informant] testimony, taken together, rational jurors could conclude that this evidence sufficiently tended to connect appellant to the offense."

3

*Cantelon v. State*, 85 S.W.3d 457, 460–61 (Tex. App.—Austin 2002, no pet.) (quoting *Hernandez v. State*, 939 S.W.2d 173, 178–79 (Tex. Crim. App. 1997)). "To determine the sufficiency of the corroboration, we eliminate the testimony of the [confidential informant] and ask whether other inculpatory evidence tends to connect the accused to the commission of the offense, even if it does not directly link the accused to the crime." *Id.* at 461 (citing *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997)). We must view the corroborating evidence in the light most favorable to the verdict. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994) (reviewing sufficiency of accomplice witness testimony); *Ivery v. State*, No. 06-13-00250-CR, 2014 WL 3906192, at *1 (Tex. App.—Texarkana Aug. 12, 2014, no pet.) (mem. op., not designated for publication).

### C.    Analysis

The record reveals several items of evidence that would tend to connect Lee to the offense, even if Taylor's testimony were eliminated. First, Taylor placed a telephone call to Lee to arrange the transaction. Lee told Taylor where to meet him and that he would be walking a dog. Brock and the other officers listened to that telephone conversation and testified as to its contents. Brock also testified that when they arrived at the agreed upon location, he saw two men walking down the road, one of whom had a dog on a leash. Although Brock was not asked if he was able to identify the men, the general description was consistent with the information revealed in Taylor's telephone conversation with Lee.

The State also introduced an audio/video recording and still image screen captures from that recording, introduced as photographs, to corroborate Taylor's testimony. The audio/video recording depicts a person identified as Lee walking with another person who was walking a dog

4

and records these individuals' encounter with Taylor. The recording itself shows them meeting and talking; it also shows their movements, including contact between their hands. The still image screen captures consist of three relevant photographs. In those images, it appears that Lee has something in his hand that could be a plastic baggie. The images also show that Lee's hand was empty after his contact with Taylor.

Finally, Lee arranged to sell Taylor one-quarter of an ounce of cocaine for $225.00. Taylor was searched immediately prior to his encounter with Lee, and he had no money or illegal drugs in his possession. After giving Taylor $225.00, Agent Brock released him to meet Lee; upon returning, Taylor was again searched and was found to possess a baggie of what was later identified as 2.56 grams of cocaine. Taylor did not have the $225.00 upon the second search. Accordingly, we conclude that the evidence is sufficient to tend to connect Lee to the commission of the offense as required by Article 38.141. The evidence is therefore sufficient to support the jury verdict, and Lee's first point of error is overruled.

## II. We Do Not Have Jurisdiction Over Lee's Claims Related to the Notice of Withdrawal of Funds from His Inmate Account

### A. Lee's Due Process Argument

Lee argues that the order directing the collection of a fine and court costs from his inmate account was entered in a manner that violated his right to due process of law. In the summary of his argument, Lee recites the following procedural facts:

> The trial judge signed a judgment of conviction by a jury on June 18, 2014. The court clerk prepared and filed a bill of costs on June 18, 2014. The court clerk notified appellant [sic] counsel of his appointment by mail dated June 19, 2014. Thereafter[,] the court clerk filed an order to withdraw funds and dated June 19,

5

2014[,] but filed on June 20, 2014. The basis for the order is shown to be Government Code §501.014[(e)].

In his argument proper, Lee contends, "The order at bar, as well as the appellate record, show no evidence of prior notice to Rashad Lee, his trial counsel or his appellate counsel that any monetary assessment was sought or even at issue in a case where he had been represented by appointed counsel from the beginning." The complained-of order attached as Appendix A to his Brief is entitled "Order to Withdraw Funds" and reflects that "THE COURT ENTERS THIS ORDER pursuant to **Government Code, Section 501.014**, on this 19th day of June, 2014."

### B. We Cannot Address Lee's Argument in this Direct Appeal from Lee's Criminal Conviction

The Texas Court of Criminal Appeals has held that when an appellant challenges the basis for assessment of court costs authorized by criminal statutes on direct appeal of his or her criminal conviction, the cost challenge claim "arises over the enforcement of statutes governed by the Texas Code of Criminal Procedure, thereby making it a criminal matter." *Armstrong v. State*, 340 S.W.3d 759, 766 (Tex. Crim. App. 2011); *see Johnson v. State*, 423 S.W.3d 385, 388 (Tex. Crim. App. 2014) (holding that cost challenge to assessment of costs mandated by criminal statutes may be raised for first time on appeal, and that, if necessary, record can be supplemented with cost bill even if cost bill is created after fact). Likewise, in *Mayer v. State*, 309 S.W.3d 552 (Tex. Crim. App. 2010), the Texas Court of Criminal Appeals held that an appellant may challenge the sufficiency of the evidence supporting a trial court's assessment of court-appointed attorney fees on direct appeal of the criminal conviction without raising the issue in the trial court first.

6

Here, Lee's argument fails to raise either a challenge to the basis of the court costs assessed or a complaint about the evidentiary sufficiency of the assessment of court costs or attorney fees. Instead, Lee challenges the collection of the costs by questioning whether the trial court's notice of withdrawal violated due process requirements. Lee supports his argument by citing to three cases; however, all three of these cases suggest that Lee's point of error cannot be raised in this direct appeal. The first case cited by Lee is a civil appeal in which this Court decided that a due process complaint related to the collection of costs is a civil matter. *See generally Abdullah v. State*, 211 S.W.3d 938 (Tex. App.—Texarkana 2007, no pet.). In the second case Lee cites, the Texas Court of Criminal Appeals found that it lacked jurisdiction to address a complaint similar to the one Lee raises here because the complaint did not involve "criminal law matters." *Johnson v. Tenth Judicial Dist. Court of Appeals at Waco*, 280 S.W.3d 866, 874 (Tex. Crim. App. 2008) (orig. proceeding). Finally, the last case cited by Lee merely clarified that a defendant must challenge the sufficiency of the evidence supporting an assessment of court costs in a deferred-adjudication order by a timely-filed direct appeal of that order deferring adjudication and assessing the contested costs. *Perez v. State*, 424 S.W.3d 81, 86 (Tex. Crim. App. 2014). *Perez* further clarified that it is too late to challenge such costs in an appeal of a subsequent order of adjudication. *Id.* Again, because Lee is not challenging the sufficiency of the evidence supporting the assessed court costs, *Perez* is inapplicable.

The line of cases discussing cost challenges raised for the first time on appeal of criminal convictions beginning with *Armstrong* and leading to *Perez* dealt exclusively with challenges to the assessment of court costs under the Texas Code of Criminal Procedure, not the collection of

7

costs under the Texas Government Code. Lee does not complain that the legal or factual bases for the costs were insufficient, but rather that the manner in which those costs were collected in this case deprived him of due process.

Lee's appellate argument directly invokes the Texas Government Code. The Texas Supreme Court and the Texas Court of Criminal Appeals have both held that challenges to the manner or means of collecting court costs under Section 501.014(e) of the Texas Government Code are civil matters. *See Johnson*, 280 S.W.3d at 866; *Harrell v. State*, 286 S.W.3d 315 (Tex. 2009). In a concurring opinion in *Perez*, Judge Alcalá made this point clear: "Proceedings under Government Code section 501.014(e) to recover court fees and costs assessed against inmates are civil in nature and are not part of the underlying criminal case." *Perez*, 424 S.W.3d at 89 (Alcalá, J., concurring). Nothing in *Perez* or the line of cases leading up to it would authorize an appellant to raise an issue concerning the collection of costs under Section 501.014(e) of the Texas Government Code in a direct appeal of a criminal conviction.[1] Accordingly, we do not have jurisdiction to address Lee's complaint in this appeal.

Moreover, because (1) the notice of withdrawal is not a final, appealable order, and (2) Lee failed to raise his civil issue with the trial court, this Court would not have civil jurisdiction to address the merit of Lee's complaint, even if properly before us. Notwithstanding the fact that the document Lee is challenging is entitled "Order to Withdraw Funds," previous cases make it clear that this is a notice, not an order. *See Goodspeed v. State*, 352 S.W.3d 714, 715 (Tex. App.—

---

[1]Further, in *Armstrong*, the Texas Court of Criminal Appeals specifically noted that "Appellant does not contest any withdrawal order issued by the trial court pursuant to the Texas Government Code *or any other collection effort*. Instead, Appellant contests *the assessment of the costs* and the sufficiency of the evidence to support the attorney fees mandated by the bill of costs." *Armstrong*, 340 S.W.3d at 766 (emphasis added).

8

Texarkana 2011, pet. denied) (citing *Harrell*, 286 S.W.3d at 316 n.1).[2] In order to secure a final, appealable order on the matter, a defendant must first raise any issue regarding the collection of costs with the trial court. *Id.* (citing *Jewell v. State*, No. 06-10-00114-CV, 2011 WL 1642769, at *1 (Tex. App.—Texarkana Apr. 29, 2011, no pet.) (mem. op.) ("'The trial court's ruling on the inmate's contest [to a withdrawal notification] is what can be appealed.'")); *see Williams v. State*, 332 S.W.3d 694, 698 (Tex. App.—Amarillo 2011, pet. denied) (citing *Ramirez v. State*, 318 S.W.3d 906, 908 (Tex. App.—Waco 2010, no pet.) (holding "[o]nly when [the withdrawal notification is] properly challenged and denied relief is there a trial court order that is final from which the inmate . . . can appeal")). Here, because Lee failed to secure an order from the trial

---

[2]For example, in *Webb v. State*, 324 S.W.3d 229 (Tex. App.—Amarillo 2010, pets. denied) (per curiam), the Court of Appeals noted,

> This document is not an "order" in the traditional sense of a court order, judgment, or decree issued after notice and hearing in either a civil or criminal proceeding. The controlling statute, TEX. GOV'T CODE ANN. § 501.014(e) ([West] Supp. 2009), describes the process as a "notification by a court" directing prison officials to withdraw sums from an inmate's trust account, in accordance with a schedule of priorities set by the statute, for the payment of "any amount the inmate is ordered to pay by order of the court." This document is more akin to a judgment nisi. A judgment nisi, commonly used in bond forfeiture proceedings, is a provisional judgment entered when an accused fails to appear for trial. A judgment nisi triggers the issuance of a capias and it serves as notice of the institution of a bond forfeiture proceeding. It is not final or absolute, but may become final. Nisi means "unless," so a judgment nisi is valid unless a party takes action causing it to be withdrawn. Similarly, a withdrawal notification issued pursuant to section 501.014(e), triggers a trust fund withdrawal, serves as notice of the collection proceeding, and continues to operate unless the inmate takes action causing the notification to be withdrawn. Therefore, rather than refer to that document as an order, we prefer to use the term "withdrawal notification" to avoid confusion with an underlying court order or judgment ordering the payment of a sum falling within at least one of the six priority categories listed in the statute.

*Id.* at 230, n.1 (citations omitted).

9

court addressing his civil law issue, we would lack jurisdiction to hear Lee's argument, even had he raised the issue in a separate, civil appeal.[3]

Because we find no error related to the judgment of conviction entered in this matter, we affirm that judgment. Because we lack jurisdiction to hear Lee's point of error concerning the trial court's Order to Withdraw Funds, we dismiss Lee's second point of error for want of jurisdiction.


Ralph K. Burgess
Justice

Date Submitted:     January 7, 2015
Date Decided:       April 9, 2015

Do Not Publish

---

[3]We note that Lee's notice of appeal states that Lee "wishes to appeal from the conviction to the Sixth Court of Appeals on errors raised by written motion and ruled on before trial and on errors arising during and subsequent to trial." Rule 25.1 of the Texas Rules of Appellate Procedure addressing perfection of an appeal in civil cases, requires a notice of appeal to identify the date of the judgment or order appealed. TEX. R. APP. P. 25.1(d). Lee's notice of appeal was filed pursuant to Rule 25.2 of the Texas Rules of Appellate Procedure since it (1) clearly states that he is appealing his conviction, and (2) fails to state that he is appealing from any order or judgment related to his civil complaint. In the absence of a specific designation of the "judgment or order appealed from" as required by Rule 25.1(d)(2), we will not presume that a notice of appeal filed on direct appeal of a criminal case also invokes this Court's civil jurisdiction.